**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| JOHN M. SWEENEY and REGINA SWEENEY, his Wife, | : : : : | |
| Plaintiffs, | : : | |
| v. | : : | Civil Action No. 16-4860 (ES) (MAH) |
| ALCON LABORATORIES, INC, EASTMAN KODAK COMPANY, ABC CORPORATIONS 1-10 (a series of fictitious corporations), and JOHN DOES 1-15 (a series of fictitious names), | : : : : : : | MEMORANDUM OPINION |
| Defendants. | : : | |

SALAS, DISTRICT JUDGE

Plaintiff John M. Sweeney ("John") alleges that injection of a medical-imaging dye called Pantopaque in 1975 has resulted in certain health-related problems. He and his wife, Plaintiff Regina Sweeney ("Regina"), assert two products-liability claims, a breach-of-warranty claim, and a loss-of-consortium claim against two named defendants. In particular, Defendant Alcon Laboratories, Inc. ("Alcon") was allegedly involved with manufacturing and distributing Pantopaque. Pending before the Court is Alcon's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) in which Alcon argues that: (1) Plaintiffs' claims are time-barred; and (2) Plaintiffs' claims are insufficiently pleaded. (D.E. No. 42).

Having considered the submissions made in support of and in opposition to Alcon's motion, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b). For the reasons below, the Court GRANTS-in-part and DENIES-in-part Alcon's motion to dismiss.

# I.    Brief Background[1]

When John was 15 years old, he suffered a neck injury in a football game.  (D.E. No. 37 ("Compl.") ¶ 12).   After the injury, on November 16, 1975, John was admitted to Temple University Hospital in Philadelphia.  (*Id.*).  The next day, a cervical myelogram was performed on him.  (*Id.* ¶ 13).  For this myelogram, "Pantopaque was injected into his spinal canal."  (*Id.*). Pantopaque is a "medical-imagining dye product" that permits the "soft tissue contents of the spinal canal" to be "outlined in radiographs and myelograms."  (*Id.* ¶¶ 7, 10).  In the following months, John "regained full use of his limbs and extremities, and was able to perform normal daily activities from September, 1976 until the events complained of" in Plaintiffs' Complaint. (*Id.* ¶ 14).

"[S]tarting in 2009," John "sought treatment for increasing lower extremity weakness, numbness, clumsiness and difficulty walking."  (*Id.* ¶ 15).  This resulted "in increased falls and by 2013 forced him to move his bed to the downstairs of his house."  (*Id.*).  The medical testing used on John, "starting in 2009," was limited to his "lumbar spine, cervical spine and brain, disclosing no abnormalities."  (*Id.* ¶ 16).

At some point thereafter, however, John received advice from a nurse, which "prompted" him to seek and obtain "MRI imaging of his thoracic spine" in 2014.  (*Id.*).  In particular, on or about August 19, 2014, an MRI of John's thoracic spine was performed.  (*Id.* ¶ 17).  The MRI "disclosed a syrinx in the spinal cord at T7-T10 and a thickening of the dura at T8 and T8."

---

[1]    The Court writes primarily for the parties and assumes their familiarity with the relevant procedural history, as well as the arguments made in support of and in opposition to Alcon's motion to dismiss.  Further, the Court notes that it must accept Plaintiffs' factual allegations as true for purposes of resolving the pending motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bistrian v. Levi*, 696 F.3d 352, 358 n.1 (3d Cir. 2012). Additional factual allegations are provided elsewhere in this Memorandum Opinion as relevant to the Court's analysis.  Finally, the Court notes that Plaintiffs invoke diversity jurisdiction under 28 U.S.C. § 1332, which the Court hereby exercises.  (*See, e.g.*, D.E. No. 37 ¶¶ 1, 2, 5, 21, 22).

(*Id.*).  The MRI results were "relayed to him on September 3, 2014." (*Id.*).  "Subsequent medical examination revealed advanced adhesive arachnoiditis with tethered spinal cord." (*Id.*).

Then, during an October 2, 2014 surgery, it was discovered that John's thoracic spine had "a dense calcified subdural mass in the subarachnoid space" and an "arachnoid adhesion." (*Id.* ¶ 18).  After that surgery, John "reasoned that, since he lacked any history of cancer or impact trauma to the thoracic region, there had to be another, less common cause for his arachnoiditis." (*Id.* ¶ 19).  He reasoned as such "having some background in medicine as part of his physical-therapy training." (*Id.*).  So John searched the internet, "which disclosed to him, for the first time, a possible causal link between his arachnoiditis, his symptoms of progressive weakness, numbness, falling and pain on the one hand, and exposure to Pantopaque on the other." (*Id.*).  "In or about October 2015," John "consulted a neurosurgeon . . . who confirmed that, indeed, mostly likely his progressive loss of lower extremity function resulted from his exposure to Pantopaque." (*Id.* ¶ 20).  By this time, John "was diagnosed with end-stage adhesive arachnoiditis." (*Id.*).  John "has lost bowel and bladder control, cannot walk unassisted, and since October 2, 2014 has, for the most part, been mobile only with the use of a wheelchair." (*Id.* ¶ 21).

Plaintiffs name Alcon and Eastman Kodak Company ("Kodak") as Defendants in their Complaint.  (*Id.* ¶¶ 1, 2).  Plaintiffs allege that "Pantopaque was created in the 1940s at Rochester University with research funding by Defendant Kodak, and was manufactured and distributed by Lafayette Pharmaceuticals, Inc., Lafayette Pharmacal, Inc. and Defendant Alcon until 1986, using materials provided by Defendant Kodak." (*Id.* ¶ 8).

Plaintiffs are Pennsylvania residents, whereas: (1) Alcon is a Delaware corporation that is headquartered in Texas and (2) Kodak is a New Jersey corporation with a principle place of

business in New York.  (*Id.* ¶¶ 1, 2).  Plaintiffs allege Kodak's New Jersey office, among other things, "promoted the nationwide sale and distribution of Pantopaque, when it was originally brought to market . . . and for several years thereafter."  (*Id.* ¶ 6).

## II.     Statute of Limitations

Alcon may raise a statute-of-limitations defense in a Rule 12(b)(6) motion to dismiss if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations."  *See Perelman v. Perelman*, 545 F. App'x 142, 149 (3d Cir. 2013) (quoting *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002)).  But the "time bar must be evident on the face of the complaint for the complaint to create a basis for dismissal."  *Id.* (citations omitted).  Thus, "[i]f the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)."  *Robinson*, 313 F.3d at 135 (quoting *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978)).

Notably, the well-recognized Rule 12(b)(6) standard applies—which requires the Court to accept as true all of the factual allegations contained in a complaint, make all reasonable inferences in favor of Plaintiffs, and refrain from engaging in any credibility determinations.  *See United States ex rel. Customs Fraud Investigations, LLC. v. Victaulic Co.*, 839 F.3d 242, 256 (3d Cir. 2016); *see also Claude Worthington Benedum Found. v. Harley*, No. 12-1386, 2013 WL 2458457, at *4, 6-7 (W.D. Pa. June 6, 2013); *Riley v. Medtronic, Inc.*, No. 10-1071, 2011 WL 3444190, at *4-5, 9 (W.D. Pa. Aug. 8, 2011).

### A.  Count One ("Products Liability/Defective Design and Manufacture") & Count Two ("Products Liability/Failure to Warn")

Alcon argues that Plaintiffs' complaint is time-barred under Pennsylvania law.  (*See* D.E. No. 42-1 at 6-13).  Alcon insists that John had two years from 2009 (i.e., until 2011) to bring a cause of action for personal injury arising out of negligent or tortious acts—but John didn't until

2016.  (*Id.* at 9).[2]  And Alcon avers that, to the extent Plaintiffs argue that the period should be tolled based on later discovery and diagnosis of arachnoiditis, "that argument should be rejected because Plaintiffs had the ability to know of the alleged injury as well as the alleged causal relationship between Pantopaque and the alleged injury as early as 2009 when his condition allegedly first manifested causing him to seek out additional physician consults."  (*See id.* at 9-13).

In opposition, Plaintiffs assert that "Alcon completely overlooks the discovery rule principles applicable under Pennsylvania law to claims arising from so-called 'creeping diseases,'" which are "latent diseases (like arachnoiditis) whose symptoms often do not emerge for years or even decades *after* the 'injury' that caused those diseases *actually occurred*."  (D.E. No. 44 at 4 (emphasis in original)).  They argue that John's "claims against Defendant Alcon could *not* have accrued prior to August 19, 2014 at the earliest, when his MRI of that date finally led to a diagnosis of arachnoiditis as the cause of his symptoms."  (*Id.* at 5 (emphasis in original)).  Plaintiffs maintain that it was only after his 2014 arachnoiditis diagnosis that John searched the internet, revealing for the first time that "*a causal link between his arachnoiditis, his symptoms of progressive weakness, numbness, falling and pain on the one hand, and exposure to Pantopaque on the other*, that [John] was able to 'connect the dots,' and recognize he may have suffered an 'injury'" from the 1975 Pantopaque myelogram.  (*Id.* at 8-9 (emphasis in original) (citing Compl. ¶ 19)).

As an initial matter, the parties agree that Pennsylvania law applies to Alcon's statute-of-limitations argument (*e.g.*, D.E. No. 42-1 at 8-9; D.E. No. 44 at 2), and the Court sees no reason to challenge that Pennsylvania law applies.  *See, e.g.*, *Raube v. X-L Specialized Trailers, Inc.*, No. 06-4628, 2008 WL 11384153, at *2 (D.N.J. Apr. 10, 2008) (stating that "both Pennsylvania

---

[2]        Plaintiffs initiated this action on August 10, 2016.  (D.E. No. 1).

and New Jersey apply a two year limitations period for personal injury claims brought as wrongful death or survival actions") (citing 42 Pa. Cons. Stat. § 5524; N.J.S.A. § 2A:14-2); *Osby v. A&E Television Networks*, No. 96-7347, 1997 WL 338855, at *3 (E.D. Pa. June 17, 1997) ("Where the parties have agreed to apply Pennsylvania law and Pennsylvania has an interest in the outcome of the litigation, there is no reason for the court, 'sua sponte, to challenge the parties' consensual choice of law.'") (quoting *Steaks Unlimited, Inc. v. Deaner*, 623 F.2d 264, 269-70 (3d Cir. 1980)).

Pennsylvania law prescribes a two-year limitations period for personal injury actions. *See* 42 Pa. Cons. Stat. § 5524(2). Although generally the period begins to run when a cause of action accrues (i.e., when an injury is inflicted and the corresponding right to bring suit arises), Pennsylvania uses the "discovery rule" in recognition that some injuries are not immediately apparent. *See Riley*, 2011 WL 3444190, at *6 (citations omitted); *Humbert v. Kurtz*, No. 05-1967, 2008 WL 719244, at *5 (M.D. Pa. Mar. 14, 2008) (citations omitted). "[T]he discovery rule has been applied in cases where the injured is unable, despite the exercise of reasonable diligence, to know that he is injured and what caused the injury." *Humbert*, 2008 WL 719244, at *5 (citations omitted).

So, "[u]nder the discovery rule, the statutory period does not begin to run until the plaintiff knows, or reasonably should know, (1) that he has been injured and (2) that his injury has been caused by another party's conduct." *Riley*, 2011 WL 3444190, at *6 (internal quotation marks and citations omitted); *see also Wehrli v. Allegheny Cty.*, No. 16-0977, 2017 WL 1233619, at *4 (W.D. Pa. Apr. 4, 2017) ("Pennsylvania's discovery rule 'applies to toll the statute of limitations in any case where a party neither knows nor reasonably should have known

of [his] injury and its cause at the time his right to institute suit arises.'") (quoting *Fine v. Checcio*, 870 A.2d 850, 859 (Pa. 2005)).

"[R]easonable diligence is not an absolute standard, but is what is expected from a party who has been given reason to inform [him]self of the facts upon which his right to recovery is premised." *Wehrli*, 2017 WL 1233619, at *4 (quoting *Fine*, 870 A.2d at 858). In this regard, "although the pertinent inquiry is characterized as objective, it is to be applied with reference to individual characteristics." *Wilson v. El-Daief*, 964 A.2d 354, 366 (Pa. 2009) (internal citation omitted).

"Because a plaintiff's awareness of his injury and its cause is fact intensive, the tolling of the discovery rule is ordinarily a question for the jury." *Rowland v. Novartis Pharm. Corp.*, 34 F. Supp. 3d 556, 567 (W.D. Pa. 2014); *see also Gleason v. Borough of Moosic*, 15 A.3d 479, 485 (Pa. 2011) ("The point at which the complaining party should be reasonably aware that he or she has suffered an injury and its cause is ordinarily an issue of fact to be determined by the jury due to the fact intensive nature of the inquiry.") (citation omitted). It is "only where reasonable minds could not differ as to the determination of the plaintiff's awareness of the injury and its cause may a court rule on a discovery rule tolling question as a matter of law." *Rowland*, 34 F. Supp. 3d at 567; *see also Knopick v. Connelly*, 639 F.3d 600, 611 (3d Cir. 2011) ("Only where the facts are so clear that reasonable minds cannot differ may the commencement of the limitation period be determined as a matter of law.") (internal quotation marks and citations omitted).

Here, the Court is unconvinced that Plaintiffs' allegations reveal, as a matter of law, that John had sufficient critical facts in 2009 to put him on notice that an injury was committed and he had some reason to suspect that injury was caused by a third party such that he had a duty to

investigate.  *See Rowland*, 34 F. Supp. 3d at 567-68 (denying summary judgment as to statute of limitations and stating, among other things, that "[w]hile a diagnosis is not necessary to toll the limitations period, all that [plaintiff's] doctors did prior to March 15 was consider the possibility that [a drug] was causing [his] jaw problems and mention that prospect to him," which "is not sufficient evidence for the Court to rule as a matter of law that the statute of limitations precludes [plaintiff's] claim") (internal citation omitted).

The Court rejects Alcon's argument that John's claims are time-barred because, according to Alcon, in 2009: (1) John had certain symptoms (*see* Compl. ¶ 15); (2) there was "extensive information regarding the alleged link between arachnoiditis and Pantopaque"; and (3) there was an "ability to conduct an internet search, such as that described in the Complaint, relating to his alleged injuries and Pantopaque." (*See* D.E. No. 45 at 3). At a minimum, accepting Alcon's position would require improperly drawing inferences (and perhaps even making factual findings) in favor of Alcon—not John—that John knew (or should have known) of the extensive information regarding the alleged link between arachnoiditis and Pantopaque in 2009. Moreover, Alcon's position appears to sidestep Plaintiffs' allegation that "[m]edical testing starting in 2009 was limited to [John's] lumbar spine, cervical spine and brain, *disclosing no abnormalities*." (Compl. ¶ 16 (emphasis added)). Indeed, Alcon's arguments plainly appear to involve factual issues that must be explored in discovery—such as its contention that: "Plaintiffs do not dispute that [certain] information was available to them in 2009 or dispute that [John] discovered and relied upon this very information in 2014 when he conducted his internet investigation." (*See* D.E. No. 45 at 6 n.3).

Simply put, reasonable minds could differ whether John exercised reasonable diligence in pursuing a medical explanation of his symptoms. *Cf. Riley*, 2011 WL 3444190, at *9 ("The facts

alleged in the Second Amended Complaint, properly viewed in the light most favorable to the Plaintiffs, demonstrate that it is not 'undeniably clear' that the Plaintiffs did not use reasonable diligence."); *see also Rowland*, 34 F. Supp. 3d at 567 ("One must have some reason to suspect that the injury was caused by a third party to impose a duty to investigate further. Where the injury is one that may result from nontortious conduct, such as a disease, that point may be difficult to discern without resolving factual issues. Subjective differences among persons and the situations in which they find themselves are relevant in making that determination.") (quoting *Coleman v. Wyeth Pharm., Inc.*, 6 A.3d 502, 510-11 (Pa. Super. Ct. 2010)).

Thus, the Court declines to find, at the pleading stage, that in 2009 John was (or should have been) aware enough of his symptoms and of certain public information regarding Pantopaque (the extensiveness of which the parties appear to dispute (*see, e.g.*, D.E. No. 42-1 at 10-13; D.E. No. 44 at 9)) such that reasonable minds could not disagree that he failed to exercise reasonable diligence in pursuing a medical explanation. In so finding, the Court is mindful of Pennsylvania federal courts' "consistent practice of denying motions to dismiss claims as untimely under Rule 12(b)(6) where the plaintiff has pled sufficient facts from which it can plausibly be inferred that the cause of action either accrued within the relevant statutory period and/or that the statute of limitations should be tolled pursuant to the discovery rule." *Claude Worthington Benedum Found.*, 2013 WL 2458457, at *7 (collecting cases).[3] As such, Alcon's arguments involve factual issues that must be explored in discovery and, if anything, may be

---

[3]     *Cf. Dailey v. Encore Med. Corp.*, No. 14-1627, 2014 WL 6982828, at *5 (M.D. Pa. Dec. 10, 2014) ("In the matter at hand, it is clear from the face of the Complaint and admitted by Plaintiffs that Mr. Dailey did in fact know of the injury. Mr. Dailey argues today that he did not know of, nor could he reasonably have known of, the cause of his injury. However, the facts are clear that the physician or someone else who was treating Mr. Dailey was aware of the cause of his injury. This Court can think of no situation in which, absent explicit wrongdoing on the part of the physician or treating medical employee, which is not alleged here, a patient would be unable to determine the cause or possible cause of his injury if the physician was in fact aware of that cause. And, indeed, Mr. Dailey visited his physician with the express purpose of determining the cause of his injury.").

renewed based on a complete record at summary judgment. Alcon's motion to dismiss is denied *without prejudice* insofar as it seeks dismissal of Counts One and Two based on statute of limitations.[4]

### B. Count Three ("Breach of Express and/or Implied Warranty")

Alcon argues that the breach-of-warranty claims are time-barred based on a four-year statute of limitations that started in 1975—even accounting for a tolling period because John was a minor when he received Pantopaque—for any implied warranty. (*See* D.E. No. 42-1 at 13-14). And, as to express warranty, "discovery of the alleged breach (which Alcon disputes exists) should have occurred in 2009 when [John] allegedly began experiencing symptoms of arachnoiditis." (*Id.* at 14-15).

In opposition, Plaintiffs concede that their claim for breach of implied warranty is time-barred under Pennsylvania law. (D.E. No. 44 at 13 n.4). But, as to their express-warranty claim, Plaintiffs incorporate by reference their reasons for opposing Alcon's statute-of-limitations challenge as to their products-liability claims and "respectfully submit that, prior to the time he was diagnosed to be suffering from arachnoiditis, there was no reason whatsoever for [John] to apprise himself of the express warranties of safety contained in [Alcon's] seriously misleading labeling package inserts." (*See id.* at 10-11).

The Court declines to dismiss Plaintiffs' breach-of-express-warranty claim on statute-of-limitations grounds. Alcon appears to advance the same arguments it made in support of dismissing Plaintiffs' products-liability claims: "The discovery of the alleged breach (which

---

[4]       In so finding, the Court declines to address the parties' dispute concerning law relating to "creeping disease" because, as Alcon itself points out (*see* D.E. No. 45 at 4), the discovery rule appears to apply in any event. *See, e.g.*, *Baselice v. Franciscan Friars Assumption BVM Province, Inc.*, 879 A.2d 270, 276 (Pa. Super. Ct. 2005) ("[W]e have applied the discovery rule in such matters as medical malpractice cases, where the plaintiff's injury, itself, is not obvious or apparent and in 'creeping disease' cases, where the plaintiff had been exposed to hazardous substances but the injury did not develop until a later time.") (internal citations omitted).

Alcon disputes exists) should have occurred in 2009 when [John] became aware of his alleged injury through the manifestation of his severe neurological symptoms and could have reasonably conducted an investigation." (D.E. No. 45 at 9; *see also* D.E. No. 42-1 at 14-15). The Court has already addressed Alcon's argument to that effect and is not so persuaded.

Thus, the Court dismisses Plaintiffs' claim for breach of implied warranty, but declines to dismiss their claim for breach of express warranty *without prejudice* on statute-of-limitations grounds.

### III. Failure to State a Claim

Alcon argues that all four of Plaintiffs' claims are inadequately pleaded. (D.E. No. 42-1 at 15). As an initial matter, however, the Court notes that Alcon does "not conduct a choice of law analysis as to the applicable law for all of Plaintiffs' claims due to the similarities between New Jersey and Pennsylvania law[,] as well as the fact that Plaintiffs fail to sufficiently state a claim under either New Jersey or Pennsylvania law." (D.E. No. 42-1 at 15 n.9). Accordingly, it cites "New Jersey and Pennsylvania case law" when arguing for dismissal of each of Plaintiffs' four counts. (*See id.*). Plaintiffs do not contest this approach in their opposition. And so neither will the Court.

### A. Count One ("Products Liability/Defective Design and Manufacture")

Alcon argues that Count One should be dismissed because Plaintiffs "failed to allege how Alcon deviated from the manufacturing standard or design specifications, or how Pantopaque was defective, and how such alleged defects caused [John's] alleged injuries." (*Id.* at 18 (citations omitted)). In opposition, Plaintiffs cite paragraphs 10, 11, 19, 20 and 24 of their Complaint, arguing that the allegations "clearly state a valid claim based upon Defendant Alcon's defective and negligent *design* of Pantopaque." (D.E. No. 44 at 19-20 (emphasis in

original)).  Thus, Plaintiffs appear to invoke a claim for defective design: "Plaintiffs Have Stated A Valid Claim For Defective Design Of Pantopaque."  (*Id.* at 19; *see also id.* at 21 ("Plaintiffs have amply alleged a valid claim against Defendant Alcon, based on Pantopaque's negligence in its defective design of Pantopaque . . . .")).

New Jersey law—which Alcon states may govern the analysis (*see* D.E. No. 42-1 at 15 n.9)—suggests that manufacturing-defect claims and design-defect claims are *different* theories of liability.  *See, e.g.*, *Zaza v. Marquess & Nell, Inc.*, 675 A.2d 620, 628 (N.J. 1996) ("Defects are classified as design defects, manufacturing defects or inadequate warning defects.") (citation omitted); *Suser v. Delavan Indus., Inc.*, 2017 WL 2290132, at *2 (N.J. Super. Ct. App. Div. May 25, 2017) (per curiam) ("In order to establish a design defect, a plaintiff must prove that the defendant product maker's design was not reasonably safe, and that a practical and feasible alternative design existed at the time of manufacture that would have reduced or prevented his harm. . . . [T]o establish a viable claim of a manufacturing defect, a plaintiff must prove that the product deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same specifications or formulae.") (cleaned up).

But nowhere does Alcon appear to analyze why Count One—to the extent it asserts a design-defect claim—is inadequately pleaded.  Rather, Alcon summarily states that: "Manufacturing and design defect claims pleaded in a similar manner regularly are dismissed." (*See* D.E. No. 42-1 at 18).  But is Alcon saying that Plaintiffs' design-defect claim should fall with their manufacturing-defect claim?  If so, why?  And to the extent Alcon is saying Plaintiffs' design-defect claim fails for the same reason that Plaintiffs' manufacturing-defect claim fails, that argument is undeveloped.  In fact, the cases Alcon cites don't appear to support any such

contention.[5]  Tellingly, even after Plaintiffs emphasized in their opposition brief that they assert a claim for defective *design* of Pantopaque, Alcon still doesn't flesh out why a design-defect claim is inadequately pleaded.  (*See* D.E. No. 45 at 13-14).

The Court declines to sua sponte address whether a design-defect claim has been adequately pleaded; after all, it is Alcon's motion to dismiss.  *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) ("The defendant bears the burden of showing that no claim has been presented.").[6]  That being said, Plaintiffs have made no attempt to maintain they are asserting a manufacturing-defect claim.  Accordingly, Count One is dismissed to the extent Plaintiffs assert a manufacturing-defect claim.  But the Court denies *without prejudice* Alcon's motion to dismiss Plaintiffs' design-defect claim, and Alcon may raise arguments in favor of dismissal in future motion practice, if any.

---

[5]  *See McMahon v. Gen. Dynamics Corp.*, 933 F. Supp. 2d 682, 695 (D.N.J. 2013) ("To maintain a manufacturing defect cause of action in New Jersey, 'a plaintiff must prove that the product was defective, that the defect existed when the product left the manufacturer's control, and that the defect proximately caused injuries to the plaintiff, [who must be] a reasonably foreseeable or intended user.'" (quoting *Myrlak v. Port Auth. of N.Y. and N.J.*, 723 A.2d 45, 52 (N.J. 1999)) (alteration in original); *see also Cogswell v. Wright Med. Tech., Inc.*, No. 15-0295, 2015 WL 4393385, at *1-4 (W.D. Pa. July 16, 2015) (analyzing and dismissing a strict-liability manufacturing-defect claim and separately analyzing and dismissing a strict-liability design-defect claim).

[6]  *Cf. Grieco v. Lanigan*, No. 15-7881, 2016 WL 3450808, at *6 (D.N.J. June 17, 2016) ("In their reply briefs, the Moving Defendants attempt to clarify their arguments and contend that Plaintiff's NJTCA claims for negligent supervision/training are conclusory under *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2008).  Although Defendants contend that Plaintiff's Complaint, which was initially filed in state court, fails to meet the federal pleading requirements, the reply papers do not provide the Court with the elements of a claim for negligent supervision/training and states instead that Plaintiff has not provided 'specific facts demonstrating an actionable claim of failure to train or supervise[.]' Without appropriate briefing, the Court declines to determine whether Plaintiff's Complaint states claims for relief against each Moving Defendants under the NJTCA based on a theory of failure to supervise/train.") (citations omitted) (alteration in original); *Ford v. Cty. of Mercer*, No. 14-0648, 2016 WL 781877, at *9 (D.N.J. Feb. 29, 2016) ("The Court also declines to dismiss the *Monell* claim based on failure to train because the County Defendants have not carried their burden to show that Plaintiffs fail to state a claim for relief based on either a pattern of violations or a single incident theory of liability. In its reply brief, the County Defendants argue that *Connick* does not permit a failure to train based on the 'single incident' of housing Defendant Gaines and Boones together, and that *Connick* permits 'single incident' failure to train claims only in situations where the failure to train is 'patently obvious' (ECF No. 54, Reply at 6), but provide no further analysis of the facts alleged in the Amended Complaint.").

### B. Count Two ("Products Liability/Failure to Warn")

In the interests of brevity, the Court declines to recount all of the parties' arguments made in support of and in opposition to Alcon's contention that Count Two must be dismissed. Rather, the issue that guides the Court's disposition regarding Count Two is as follows.

For Count Two, Plaintiffs state in their opposition *brief* that: "the actual language of [Alcon's] 'post-1969' Pantopaque warnings . . . were included in the Pantopaque package inserts, those package inserts are incorporated by reference into Plaintiffs' . . . Complaint, and this Court can take judicial notice of the contents of those package inserts, as well as of the publicly circulated statements of the FDA related to them." (D.E. No. 44 at 15). Plaintiffs aver that certain allegedly FDA-mandated warning language was not properly included in Pantopaque labeling. (*See id.* at 15-16). Further, Plaintiffs refer to an FDA letter sent to Pantopaque distributor Lafayette Pharmacal. (*See id.*). Plaintiffs' effort to save Count Two from dismissal is directly linked to the language in (or absent from) Pantopaque package inserts. (*See id.* at 17-18).

Thus, as Alcon aptly notes (*see* D.E. No. 45 at 9-10), Plaintiffs rely on language allegedly included in Pantopaque package inserts to argue that their failure-to-warn claim is sufficiently pleaded. And, again as Alcon aptly notes (*see id.* at 9-10, 12 n.4), nowhere is the Court provided the very package insert or other materials Plaintiffs appear to rely upon. *Cf. Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case.") (internal quotation marks, textual modifications and citations omitted).

"[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (internal quotation marks and citations omitted) (alteration in original). An opposition brief advances "legal theories" that "are helpful only to the extent that they find support in the allegations set forth in the complaint." *Id.*

Therefore, Count Two must be dismissed *without prejudice*. To be sure, the Court declines to engage in a seemingly speculative and arguably improper exercise of determining whether Plaintiffs' failure-to-warn claim survives if the Court accepts the material introduced by way of an opposition brief.[7] Plaintiffs may amend their Complaint per their request made in the alternative on page 26 of their opposition brief. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) ("[I]f a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile."); *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486-87 (3d Cir. 1990) ("[W]e have held consistently that leave to amend should be granted freely. . . . This approach ensures that a particular claim will be decided on the merits rather than on technicalities.") (internal citations omitted).

## C. Count Three ("Breach of Express and/or Implied Warranty")

Alcon argues that Plaintiffs fail to properly plead a breach-of-express-warranty claim because they fail to identify any actual representations, how the representations became a basis

---

[7] *Cf. Frederico v. Home Depot*, 507 F.3d 188, 201 (3d Cir. 2007) (stating that "we do not consider after-the-fact allegations in determining the sufficiency of [the] complaint"); *Bilby v. Hoffman*, No. 14-2470, 2016 WL 859672, at *1 n.1 (M.D. Pa. Jan. 27, 2016) ("To the extent Bilby attempts to amend his pleading through his brief in opposition, it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss. Thus, the Court has not considered these additional factual averments or additional claims to the extent Bilby has made them in his responses.") (internal quotation marks and citations omitted); *Waitkus v. Pressler & Pressler, L.L.P.*, No. 11-6531, 2012 WL 686025, at *3 (D.N.J. Mar. 2, 2012) ("It is well-established that the Court's review of the sufficiency of a claim will not take into account factual allegations that are not made in the Complaint."); *Kim v. World Sav. Bank, F.S.B.*, No. 09-2637, 2009 WL 5205457, at *3 (D.N.J. Dec. 23, 2009) (stating that the "sufficiency of Plaintiff's Amended Complaint is determined by evaluating the allegations he actually made in the complaint").

for the bargain, or how Pantopaque failed to conform to the representation. (D.E. No. 42-1 at 22). Further, Alcon asserts that Plaintiffs' Complaint "is devoid of even the most basic information concerning this purported warranty—*i.e.*, the actual content of the warranty; who made it and when; and where, in what media, and under what circumstances it was made." (*Id.*).

In opposition, as an initial matter, Plaintiffs argue that Pennsylvania courts "*have* recognized the validity of express-warranty claims against manufacturers of prescription drugs and devices." (D.E. No. 44 at 21 (emphasis in original)). As for their allegations, Plaintiffs again argue that their "Pantopaque package inserts are incorporated by reference into" the Complaint—as is the relevant language from those inserts—which purportedly "*supplies* the 'warranty' information [Alcon] alleges to be missing." (*See id.* at 22-23 (emphasis in original)). Plaintiffs go on to reproduce the purported relevant language in their opposition brief. (*See id.*). Plaintiffs conclude that: "Representations of this sort clearly amount to an express warranty under Pennsylvania law." (*Id.* at 23 (citation omitted)).

The Court agrees with Alcon on two fronts. First, Alcon correctly notes that Plaintiffs' argument regarding whether Pennsylvania case law recognizes the validity of express-warranty claims in this context "is irrelevant to the determination of the sufficiency of Plaintiffs' breach of express warranty claim." (*See* D.E. No. 45 at 14). Second, Alcon correctly notes that the language from Pantopaque package inserts is not in the Complaint and should not be considered. (*See* D.E. No. 45 at 15).

As the Court has already ruled *supra*, it will not consider material first supplied in Plaintiffs' opposition brief in assessing whether a claim is adequately pleaded. Plaintiffs'

express-warranty claim is dismissed *without prejudice*.[8]  Plaintiffs may amend their Complaint

per their request made in the alternative on page 26 of their opposition brief.

### D.  Count Four ("Loss of Consortium, by Plaintiff Regina Sweeney")

Alcon argues that, because "Plaintiffs have pleaded inadequately as to the underlying

tortious claims, [Regina's] loss of consortium claim must also be dismissed."  (D.E. No. 42-1 at

24).  Predictably, Plaintiffs respond that their "other claims are actually highly *meritorious*" and

therefore Regina's loss-of-consortium claim is valid.  (D.E. No. 44 at 23).

Suffice it to say that the Court is not dismissing all of Plaintiffs' claims.  In particular, the

Court determined that Alcon has failed to meet its burden to dismiss Plaintiffs' design-defect

claim (Count Two) at this time.  Therefore, the Court denies *without prejudice* Alcon's motion to

the extent it seeks dismissal of Count Four.

### E.  Alleged Failure to Differentiate Between Defendants (All Counts)

Last, Alcon argues that "Plaintiffs' claims also are subject to dismissal under Fed. R. Civ.

P. 8(a)(2) because the Complaint uses collective or aggregated allegations" and "makes general

claims against all named Defendants in a series of conclusory allegations without providing any

factual allegations to distinguish their conduct."  (D.E. No. 42-1 at 24-25).  It asserts that, "as to

each of Plaintiffs' claims, the Complaint lumps all named defendants—Alcon and Eastman

Kodak Company—together in a series of conclusory allegations without differentiating between

any of the named defendants."  (*Id.* at 26).

In opposition, Plaintiffs argue that the cases Alcon's cites in advancing its argument are

"readily distinguishable" because those cases involve many more defendants than this action or a

heightened pleading standard under Federal Rule of Civil Procedure 9(b).  (*See* D.E. No. 44 at

---

[8]         As noted *supra*, Plaintiffs have agreed on dismissal of their implied-warranty claim (*see* D.E. No. 44 at 13 n.4), so Alcon's arguments in favor of dismissal under Rule 12(b)(6) are moot (*see* D.E. No. 42-1 at 23-24).

23-25).  Alcon's silence in its reply is telling, and the Court declines to dismiss Plaintiffs' Complaint on this basis.  *Cf. Falat v. Cty. of Hunterdon*, No. 12-6804, 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013) ("It may at times be appropriate and convenient for a pleading to use the short-hand term 'Defendants,' but when the Complaint has named 16 separate defendants (exclusive of fictitiously named defendants) who occupied different positions and presumably had distinct roles in the alleged misconduct, Plaintiffs cannot merely state that '*Defendants* did x'—they must specifically allege *which* Defendants engaged in what wrongful conduct." (emphases in original)).

## IV.    Conclusion

For the reasons above, the Court grants in part and denies in part Alcon's motion to dismiss under Rule 12(b)(6).  *First*, the Court denies *without prejudice* Alcon's motion insofar as it seeks dismissal of claims based on statute of limitations—with the exception that Plaintiffs concede that their claim for breach of implied warranty (which is part of Count Three) is time-barred under Pennsylvania law.  (*See* D.E. No. 44 at 13 n.4).  *Second*, the Court dismisses Count One insofar as it asserts a manufacturing-defect claim (which is part of Count One), but denies *without prejudice* Alcon's motion insofar as it seeks dismissal of a design-defect claim (which is also part of Count One).  *Third*, the Court dismisses Counts Two and Three (express warranty only) *without prejudice*.  *Fourth*, the Court denies *without prejudice* Alcon's motion insofar as it seeks dismissal of Count Four.  An appropriate Order accompanies this Memorandum Opinion.

<u>s/Esther Salas</u>
**Esther Salas, U.S.D.J.**