**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN M. SWEENEY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> LAYAYETTE PHARMACEUTICALS, INCORPORATED, *et al.* <br><br> Defendants. | Civil Action No. 16-4860 (ES) (MAH) <br><br> ORDER |

**SALAS, DISTRICT JUDGE**

It appearing that:

1. Before the Court is defendant Alcon Laboratories, Inc.'s ("Defendant") motion for summary judgment on plaintiffs John M. Sweeney ("Mr. Sweeney") and Regina Sweeney's (collectively, "Plaintiffs") claims asserted in their fifth amended complaint (D.E. No. 65 ("Fifth Amended Complaint" or "Fifth Amend. Compl.")). (D.E. No. 85 ("Motion")). Having reviewed the parties' submissions, the Court decides the Motion on the papers and without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).

2. Summary judgment is appropriate if the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

1

3. The sole issue presented in this Motion is whether the statute of limitations ran before Plaintiffs brought their case before the Court. The parties agree, and the Court has held, that Pennsylvania law governs this dispute. (D.E. No. 86 ("Mov. Br.") at 20 n.5; D.E. No. 91 ("Opp'n Br.") at 20; *see also* D.E. No. 62 at 5–6). Pursuant to Pennsylvania law, a cause of action to recover damages for an alleged wrongful or tortious act must be brought within two years. 42 Pa. C.S. § 5524(2). The general rule is that the statute of limitations begins to run when the injury is inflicted. *Wilson v. El-Daief*, 964 A.2d 354, 361 (Pa. 2009); *see also Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005) ("limitations periods are computed from the time the cause of action accrued."); *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983) ("statute of limitations begins to run as soon as the right to institute and maintain a suit arises.").

4. However, in cases "involving latent injury, and/or instances in which the causal connection between an injury and another's conduct is not apparent," Pennsylvania adopts a "discovery rule" that "toll[s] the statute of limitations until the plaintiff discovers, or reasonably should discover, that she has been injured and that her injury has been caused by another party's conduct." *Wilson*, 964 A.2d at 361–62. This rule applies when a plaintiff could not ascertain the injury or its cause, despite "the exercise of reasonable diligence." *Simon*, 989 A.2d at 365; *see also Pocono*, 468 A.3d at 471. The test to determine whether a plaintiff exercised reasonable diligence is objective but takes into account "differences between persons and their capacity to meet certain situations and the circumstances confronting them at the time in question." *Cochran v. GAF Corp.*, 666 A.2d 245, 249 (1995) (internal alternation omitted). In other words, "a plaintiff is not under an absolute duty to discover the cause of his illness. Instead, he must exercise only the level of diligence that a reasonable man would employ under the facts and circumstances presented in a particular case." *Id*.

5. In the summary judgment context, "[w]here the issue involves a factual determination regarding what constitutes a reasonable time for the plaintiff to discover his injury and its cause, the issue is usually for the jury." *Id.* at 248. This is because "a plaintiff's awareness of his injury and its cause is fact intensive." *Rowland v. Novartis Pharm. Corp.*, 34 F. Supp. 3d 556, 567 (W.D. Pa. 2014) (citing *Wilson*, 964 A.2d at 365–66). Nevertheless, "where the facts are so clear that reasonable minds cannot differ, the commencement period may be determined as a matter of law." *Cochran*, 666 A.2d at 248.

6. Plaintiffs filed the instant case on August 10, 2016, asserting personal injury claims based on end-stage adhesive arachnoiditis allegedly caused by the injection of a radiocontrast agent Mr. Sweeney received in 1975. (*See generally* Fifth Amend. Compl.; D.E. No. 1). In its Motion, Defendant argues that Mr. Sweeney "had notice of his injury and the potential connection to his 1975 trauma by early 2012." (Mov. Br. at 25). Defendant further argues that a CT scan dated August 30, 2013 reported "a neurologist's finding that [Mr. Sweeney's] imaging was indicative of arachnoiditis ossificans" (the "2013 Report"). *(Id.* at 26). At this point, according to Defendant, "Plaintiffs had full access to the information needed to investigate their claims" and thus, "statute of limitations commenced, at the very latest, by August 30, 2013." (D.E. No. 97 ("Reply Br.") at 14–15; Mov. Br. at 27). Because Plaintiffs failed to file the instant action until almost three years later in 2016, Defendant argues that Plaintiffs' claims are time-barred. (Mov. Br. at 31).

7. On the face of the submissions, the parties dispute material facts necessary for the Court to make a determination on Plaintiffs' claims, making the Fifth Amended Complaint unsuitable for summary judgment. For example, while the parties do not appear to dispute that Mr. Sweeney's urologist, Dr. Schachter, did not discuss with Mr. Sweeney the 2013 Report's reference to "arachnoiditis ossificans," the parties dispute whether Mr. Sweeney saw the 2013

3

Report during his visit to Dr. Schachter's on September 3, 2013. (D.E. No. 98-1 at 39 & 41). The parties further dispute whether Mr. Sweeney did not see the 2013 Report until 2014. (*Id.* at 47 & 55–56; *see also* Reply Br. at 13). Contrary to Defendant's contentions, the Court finds that the time and circumstances under which Plaintiffs actually obtained or reviewed the 2013 Report is material to decide if Mr. Sweeney even had inquiry notice in 2013. *See Wilson*, 964 A.2d at 364 (stating that Pennsylvania's discovery rule is grounded on inquiry notice and ties "commencement of the limitations period to actual or constructive knowledge of at least some form of significant harm" or "some reason to awaken inquiry and direct diligence in the channel in which it would be successful") (internal citations and quotation marks omitted). In other words, the Court declines to find that the mere existence of the 2013 Report referencing "arachnoiditis ossificans," without more, is sufficient to "awaken inquiry" or to show "actual or constructive knowledge." *See id.*

8.  More importantly, reasonable minds could differ about when Mr. Sweeney discovered, or should have discovered, his injury and its cause. *See id.*, 964 A.2d at 362. For example, even considering Mr. Sweeney's career as a physical therapist, a jury could find that Mr. Sweeney's 2012 letter stating "perhaps something more than the old injury is contributing to my increasing weakness" does not sufficiently demonstrate that Mr. Sweeney was aware, in 2012, that he had been injured. (*See* Reply Br. at 8). In addition, even assuming that Mr. Sweeney was shown the 2013 Report during the visit with Dr. Schachter, the circumstances surrounding the 2013 Report do not unambiguously establish that "Plaintiffs possessed everything they needed to discover their putative claims" at that time. (*See* Mov. Br. at 27) (internal quotation marks omitted). The CT scan was conducted for an unrelated condition, namely, prostate cancer;[1] the

---

[1] The parties dispute as to whether Mr. Sweeney had been diagnosed with prostate cancer at this point. Plaintiffs assert that the purpose of the CT scan is to rule out metastasis of prostate cancer, which had already been diagnosed, while Defendant asserts that the scan was conducted as part of screening for potential prostate cancer. (D.E. No. 95 at 13). The Court finds the dispute immaterial for purposes of this Motion.

2013 Report noted "nonspecific curvilinear calcification/hyperdensity" of the spine, which was "likely benign" and "may [have been] related to" six possible conditions, one of which was "arachnoiditis ossificans;" Mr. Sweeney's doctors treating him for his prostate cancer never discussed the finding of calcification or the reference to "arachnoiditis ossificans" with him prior to September 2014. (*see* D.E. No. 95 at 13; *see also* D.E. No. 98-1 at 39–40, 46). Given these undisputed facts, a jury could find that a reasonable person in Mr. Sweeney's situation in August 2013 would not be able to make the connection between "arachnoiditis ossificans" in the 2013 Report and Mr. Sweeney's symptoms of lower limb weakness, and further uncover its cause to be the radioactive agent he received in 1975.

9. To sum, the Court finds that there are genuine issues of fact material to determining when Mr. Sweeney had inquiry notice of his injury and its cause. In any event, even assuming, as Defendant argues, that the disputed facts are immaterial, reasonable minds still could differ as to whether Mr. Sweeney exercised reasonable diligence before initiating the instant action.

Accordingly, IT IS on this 31st day of December 2019;

**ORDERED** that Defendant's motion for summary judgment is DENIED; and it is further

**ORDERED** that the Clerk of Court shall TERMINATE Docket Entry Number 85.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**