**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN M. SWEENEY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> LAFAYETTE PHARMACEUTICALS, INC., *et al.*, <br><br> Defendants. | Civil Action No. 16-4860 (ES) (MAH) <br><br> OPINION |

**SALAS, DISTRICT JUDGE**

Before the Court is defendant Eastman Kodak Company's ("Eastman Kodak") motion to dismiss plaintiffs John and Regina Sweeney's ("Plaintiffs") fifth amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.E. No. 75). Having considered the parties' submissions and having held oral argument on the motion on April 15, 2020 (D.E. No. 126), the Court GRANTS Eastman Kodak's motion to dismiss.

**I.  Background**

Plaintiffs bring this lawsuit against Eastman Kodak and several other defendants, alleging that defendants are liable for the negative effects of a medical-imaging dye called Pantopaque. (*See generally* D.E. No. 65 ("Fifth Amended Complaint" or "FAC")). Eastman Kodak "was a manufacturer and nationwide distributer of Pantopaque, and/or of materials used in the manufacture of Pantopaque." (*Id.* ¶ 2). Plaintiffs allege that Mr. Sweeney was injected with Pantopaque in November 1975, and as a result, has suffered significant medical ailments including

lower extremity weakness, numbness, inability to run, inability to walk without assistance, and loss of bowel and bladder control.  (*Id.* ¶¶ 16–25).  As a result of these injuries, Plaintiffs bring claims against the defendants for products liability (defective design), products liability (failure to warn), breach of express warranty, and loss of consortium.  (*Id.* ¶¶ 26–40).

On June 26, 2018, Eastman Kodak filed a motion to dismiss, arguing that an order of the Bankruptcy Court of the Southern District of New York ("the Bankruptcy Court") bars Plaintiffs' claims.  (*See generally* D.E. No. 75-2 ("Def. Mov. Br.")).  According to the motion, on January 19, 2012, Eastman Kodak filed a voluntary petition with the Bankruptcy Court under Chapter 11 of Title 11 of the United States Code.  (*Id.* at 5).  On August 23, 2013, the Bankruptcy Court confirmed Eastman Kodak's plan of reorganization ("Bankruptcy Plan"), which became effective on September 3, 2013.  (*Id.* at 7; *see also* D.E. No. 75-6 ("Exhibit B")).[1]

The Bankruptcy Plan discharged and terminated all claims against Eastman Kodak, whether known or unknown, and contained an injunction enjoining the commencement or prosecution of any claims or causes of action discharged pursuant to the Bankruptcy Plan.  (Def. Mov. Br. at 8; *see also* Exhibit B at 63 & 73).  The Bankruptcy Court's confirmation order contained a similar provision.  (Def. Mov. Br. at 8; Exhibit B at 63).  In addition, the Bankruptcy Court's confirmation order states that the Bankruptcy Court "shall retain exclusive jurisdiction over all matters arising out of, or related to, these Chapter 11 Cases and the [Bankruptcy] Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code . . . ."  (Exhibit B at 55).[2]

---

[1] The Court considers the bankruptcy documents as matters of public record.  *See Sanders v. CACH, LLC*, No. 19-996, 2019 WL 4271742, at *3 n.6 (D.N.J. Sept. 10, 2019).

[2] Based on the facts presented in the motion to dismiss, the Court became concerned that it might lack jurisdiction to adjudicate the claims between Plaintiffs and Eastman Kodak and thus issued an Order to Show Cause.  (D.E. No. 99).  Following briefing on the issue, the Court determined that both it and the Bankruptcy Court have jurisdiction over the pending motion and retained jurisdiction since both parties requested that this Court decide the motion to dismiss.  (D.E. No. 110).

The parties agree that determining whether the Bankruptcy Plan discharged Plaintiffs' claims involves a two-step analysis looking at (i) whether Plaintiffs' claims are considered "prepetition claims," and (ii) whether the discharge would comport with fundamental due process regarding notice. (Def. Mov. Br. at 13–16; D.E. No. 77 ("Pl. Opp. Br.") at 5). The parties also agree that Plaintiffs' claims are prepetition claims, and that Plaintiffs were in the category of unknown creditors at the time of the bankruptcy. (Pl. Opp. Br. at 5 & 14 ("Plaintiffs agree with [Eastman] Kodak that . . . Plaintiffs were clearly in the category of 'Unknown Creditors' at the time of Kodak's Bankruptcy proceeding.")). Thus, the sole issue for the Court to decide is whether notice by publication of the claims bar date and bankruptcy confirmation hearing was sufficient to afford unknown creditors such as Plaintiffs due process.

However, in their initial briefing, the parties appeared to dispute whether Second or Third Circuit law should govern the Court's due process analysis. By way of a Letter Order, this Court ordered supplemental briefing on the issue, and explained that, while all jurisdictions must recognize the right to fundamental due process, courts in different jurisdictions have different ways of evaluating whether an unknown creditor received adequate due process in a bankruptcy proceeding. (D.E. No. 110 at 4–5). Eastman Kodak suggests Second Circuit law should apply, and Plaintiffs suggest Third Circuit law should apply; however, each side contends that their arguments are supported under either circuit's law. (*See* D.E. No. 78 ("Def. Reply Br.") at 2; D.E. No. 118 ("Pl. Supp. Br.") at 1).

On April 15, 2020, the Court conducted a telephonic oral argument on the due process issue. (D.E. No. 126). Having now considered the parties' submissions and oral arguments, the Court agrees with Eastman Kodak that under either Second or Third Circuit law, Plaintiffs claims must be dismissed because, for unknown creditors, notice by publication was sufficient to satisfy

due process.[3]

## II.  Legal Standards

### a.  Motion to Dismiss Standards

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Bell*, 550 U.S. at 556).

"When reviewing a motion to dismiss, all allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (internal quotation marks omitted).  The Court is not required to accept as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

---

[3]  The parties do not cite to any clear authority indicating which law this Court should apply in considering whether the Bankruptcy Court's confirmation of the Bankruptcy Plan and injunction bars Plaintiffs' claims, and the Court has found none.  Although it is not necessary for the Court to decide this issue, the Court notes that Eastman Kodak's arguments for application of Second Circuit law are largely unrebutted by the Plaintiffs.  (*See generally* Pl. Opp. Br. & Pl. Supp. Br.).

### b. Due Process Standards

The Supreme Court has instructed that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Company*, 339 U.S. 306, 314 (1950). Moreover, the Supreme Court "has not hesitated to approve of resort to publication as a customary substitute . . . where it is not reasonably possible or practicable to give more adequate warning." *Id.* at 317. In the case of persons missing or unknown, it has been recognized that "employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights." *Id.*

Courts in different jurisdictions have different ways of evaluating whether a creditor received adequate due process in a bankruptcy proceeding. The Third Circuit has provided six factors that a court may wish to consider to determine whether a particular claim has been discharged by a plan of reorganization, including: (i) the circumstances of the initial exposure to the product at issue, (ii) whether and/or when the claimants were aware of their vulnerability to the product at issue, (iii) whether notice of the claims bar date came to their attention, (iv) whether the claimants were known or unknown creditors, (v) whether the claimants had a colorable claim at the time of the bar date, and (vi) other circumstances specific to the parties, including whether it was reasonable or possible for the debtor to establish a trust for future claimants as provided by 11 U.S.C. § 524(g). *In re Grossman's Inc.*, 607 F.3d 114, 127–28 (3d Cir. 2010). Although the Third Circuit provided these factors in the context of an asbestos case, courts in the circuit have applied

them in other contexts as well. *See*, *e.g.*, *Davis v. Grubb*, No. 12-4628, 2013 WL 2297185, at \*6 (E.D. Pa. May 23, 2013).

As one court summarized the issue, "these factors, when considered in their totality, ultimately concern two key issues . . . . The first is whether there was a viable claim under the Bankruptcy Code and the second is whether sufficient notice was given to satisfy due process requirements." *Davis*, 2013 WL 2297185, at \*7 n.6. To that end, some courts in the Third Circuit have stated that notice by publication generally satisfies due process for unknown creditors. *Id.* at \*7 (analyzing all six *Grossman* factors but explaining that "[g]enerally, notice by publication in national newspapers is sufficient to satisfy the notice requirements of due process for unknown claimants"); *see also In re Liquid Aluminum Sulfate Antitrust Litig.*, No. 16-2687, 2017 WL 3131977, at \*12 (D.N.J. July 20, 2017) (concluding that the plaintiffs were known creditors, but explaining that "if the creditor is unknown to the debtor then notice by publication satisfies due process and serves as adequate notice"); *In re New Century TRS Holdings, Inc.*, 465 B.R. 38, 50 (Bankr. D. Del. 2012) ("Based upon consideration of relevant case law and the record . . . I conclude that the Debtors' publication of Bar Date Notice in the national edition of *The Wall Street Journal*, supplemented with notice in the *Orange County Register*, was reasonable and constitutionally adequate notice for unknown creditors.").

The Second Circuit does not have the same factors analysis. In the Second Circuit, the relevant inquiry for the due process analysis is whether the party giving notice acted reasonably in selecting means likely to inform persons affected, and most courts hold that "for unknown creditors whose identities or claims are not reasonably ascertainable, and for creditors who hold only conceivable, conjectural or speculative claims, constructive notice of the bar date by publication is sufficient" to satisfy due process. *In re Chateaugay Corp. Reomar, Inc.*, No. 86-11270, 2009

WL 367490, at *5 (Bankr. S.D.N.Y. Jan. 14, 2009); *see also In re Chemtura Corp.*, No. 09-11233, 2016 WL 11651714, at *13 (Bankr. S.D.N.Y. Nov. 23, 2016); *DePippo v. Kmart Corp.*, 335 B.R. 290, 297 (S.D.N.Y. 2005).

### III.     Analysis

Applying these standards here, the Court concludes that Plaintiffs were afforded due process in the bankruptcy proceeding.

To start, Plaintiffs admit that the claims they bring against Eastman Kodak are prepetition claims that would be discharged by the Bankruptcy Plan and injunction if they were afforded due process. (Pl. Opp. Br. at 5 & 19). Plaintiffs also agree that they were unknown creditors at the time the bankruptcy proceeding took place. (*Id.* at 14). Moreover, the Bankruptcy Court documents demonstrate that, to reach unknown creditors such as Plaintiffs, Eastman Kodak gave publication notice of the bankruptcy proceedings, the claims bar date, and the hearing to consider confirmation of the plan (including the release and injunction provision thereof). (Def. Mov. Br. at 18; *see also* D.E. Nos. 75-7 to 75-11). These notices were published in the National Edition of the *New York Times*, the *Wall Street Journal*, *USA Today*, and the *Rochester Democrat & Chronicle*.[4] The Bankruptcy Court approved this notice as being "adequate and appropriate as to all parties affected or to be affected by the Plan" and "in compliance with the Bankruptcy Rules, the Local Rules and the Solicitation Procedures Order." (Exhibit B at 5 & 8–9). Despite Eastman Kodak's notice by publication, Plaintiffs argue that something more was required to afford them due process. But under the standards articulated by the Supreme Court and both the Second and Third Circuit, the Court does not agree.

---

[4] Notice of the deadlines for filing proofs of claims was filed on May 23, 2012, in the *Rochester Democrat & Chronicle* and in the *New York Times*. (D.E. Nos. 75-7 & 75-8 (Exhibits C & D)). The notice of the confirmation hearing was published on July 16, 2013, in the *Rochester Democrat & Chronicle*, *USA Today*, and in the National Edition of the *Wall Street Journal*. (Exhibit B at 3; *see also* D.E. Nos. 75-9, 75-10 & 79-11 (Exhibits E, F & G)).

In particular, the Court is guided by the abundance of case law suggesting that notice by publication is generally sufficient for unknown creditors. *See, e.g.*, *Mullane*, 339 U.S. at 314; *Davis*, 2013 WL 2297185, at *7; *In re Liquid Aluminum Sulfate Antitrust Litig.*, 2017 WL 3131977, at *12; *In re Chemtura Corp.*, 2016 WL 11651714, at *13; *In re Chateaugay Corp. Reomar*, 2009 WL 367490, at *5. To confront this caselaw, Plaintiffs do not argue that they were entitled to actual notice, and they do not argue that the method of publication was insufficient; rather, Plaintiffs argue that because Eastman Kodak had been sued in the past for injuries related to Pantopaque, it should have included information about those potential claims in the notices. (Pl. Supp. Br. at 4–5). But the cases Plaintiffs rely upon for this position are either easily distinguishable from the present one or do not bind this Court. For instance, Plaintiffs point out that in *In re Johns-Manville Corporation*, the notice sent to unknown creditors contained information about potential asbestos claims. 552 B.R. 221, 243 (Bankr. S.D.N.Y. 2016). However, in that case, there were pending class action asbestos lawsuits at the time of the bankruptcy, and those adversary proceedings were transferred to the bankruptcy court. *Id.* at 242. Thus, there, unlike here, it was clear "that asbestos liability would play a factor in [debtor's] ability to reorganize," and therefore information about such claims was included as part of the notice. *Id.* at 243. Plaintiffs also rely on a case from the Eastern District of New York for the same position. (*See generally* Pl. Supp. Br. (citing *DPWN Holdings (USA), Inc. v. United Air Lines Inc.*, 871 F. Supp. 2d 143, 151 (E.D.N.Y. 2012)). There, the lower court held that "under the[] circumstances, discharge of the claim satisfies due process only if the debtor notified the claimant not only of the pending bankruptcy proceedings, but also provided sufficient information to apprise the claimant of the nature of the claim to be discharged." *DPWN Holdings*, 871 F. Supp. 2d at 157. However, this Court is not bound by a decision out of the Eastern District of New York even if it were to

apply the law of the Bankruptcy Court in the Southern District of New York. In any event, the Court does not find the reasoning of the *DPWN* court persuasive in the present case. Accordingly, the Court cannot conclude that under these particular circumstances, notice of the nature of every potential claim to be discharged was necessary.[5]

Moreover, even an analysis of the *Grossman* factors weighs in favor of dismissal.[6] The first factor—circumstances of the initial exposure to the product at issue—weighs in favor of Eastman Kodak because Mr. Sweeney was exposed to Pantopaque well before Eastman Kodak filed for bankruptcy. (FAC ¶ 9); *Davis*, 2013 WL 2297185, at *6 ("the notice of Defendants' bankruptcy, which was published in the newspaper subsequent to [p]laintiff's initial exposure, weighs in favor of finding that [p]laintiffs received adequate notice and that their claims should be discharged"). The second factor is whether and/or when the claimants were aware of their vulnerability to the product at issue. Accepting the allegations in the Fifth Amended Complaint as true, this factor weighs in favor of Plaintiffs, because Plaintiffs allege that they did not become aware of Mr. Sweeney's vulnerability until September 2014. (FAC ¶ 20).[7] The third and fourth

---

[5] During oral argument, counsel for Plaintiffs also pointed the Court to *In re Chemtura*, 2016 WL 11651714, at *15. But there, the court rejected the claimants' argument that the notice should have contained more detailed information about the potential claims being discharged and held that "the Bar Date notice [published in national and local newspapers across the country] contained more than adequate information and language" to notify unknown creditors of their potential claims. *Id.*

[6] In the briefing and at oral argument, both sides referenced facts outside of the Fifth Amended Complaint that could potentially be relevant to this due process inquiry. In particular, the parties seem to agree that Eastman Kodak was sued approximately 45 to 48 times in lawsuits relating to Pantopaque, and that the latest cases against Eastman Kodak relating to Pantopaque were filed in the late 1990s—twelve years before Eastman Kodak filed for bankruptcy. While the Court considers these facts to be more favorable to Eastman Kodak, they are not properly before the Court at the motion to dismiss stage. The Court indicated as much at oral argument and asked the parties whether it needed to consider more information outside of the pleadings to adequately conduct a due process analysis using the *Grossman* factors. Although the Court acknowledges that discovery could allow it to do a more fulsome analysis of these factors, the Court agrees with Eastman Kodak that the record is sufficient to decide this issue at this time. This is especially true because the *Grossman* factors are ones that the court "may wish to consider." *In re Grossman's*, 607 F.3d at 127.

[7] The Court notes that Mr. Sweeney began experiencing medical issues as early as 2009 (FAC ¶ 18), but Plaintiffs contend that they were not aware of the cause of those issues until much later. Given the Court's obligation at the motion to dismiss stage, it construes these facts in favor of Plaintiffs.

factors—whether the notice of the claims bar date came to their attention and whether the claimants were known or unknown creditors—weigh in Eastman Kodak's favor. Plaintiffs acknowledge that they were unknown creditors, and thus "[u]nder the precedent established in *Grossman* and *Wright*, Plaintiffs therefore were on notice through the publication of the bankruptcy." *Davis*, 2013 WL 2297185, at *8. The fifth factor is whether there was a colorable claim at the time of the bar date. Eastman Kodak argues that this factor weighs in its favor because, if Mr. Sweeney was reasonably diligent, he should have known of his claim by the time Kodak published its notice of bar date. However, according to Plaintiffs, they were not aware of their claims until at least September 2014. (FAC ¶ 20). Thus, accepting the facts in the Fifth Amended Complaint as true, the fifth factor weighs in Plaintiffs' favor. Finally, both sides rely on facts outside of the Fifth Amended Complaint to argue the sixth factor—whether it was reasonable or possible for the debtor to establish a trust for future claimants. The Court does not consider these facts, and because no trust was established in this case, "this factor is neutral." *Davis*, 2013 WL 2297185, at *8. After weighing the factors, the Court finds that three of the six *Grossman* factors, with one being neutral, warrant a finding that Plaintiffs' claims were discharged in bankruptcy. *See id.*

Based on all of the foregoing, including an analysis of the available case law in both the Second and the Third Circuit, the Court is satisfied that Plaintiffs, as unknown creditors with prepetition claims, were afforded due process through Eastman Kodak's notice by publication. A contrary result would interfere with the fundamental purpose of the Bankruptcy laws—to provide debtors with finality and a fresh start. *In re WR Grace & Co.*, 729 F.3d 332, 346 (3d Cir. 2013).

**IV. Conclusion**

For the reasons stated above, Eastman Kodak's motion to dismiss is GRANTED and Plaintiffs' claims against Eastman Kodak are dismissed *with prejudice*. An appropriate Order accompanies this Opinion.

s/ *Esther Salas*
**Esther Salas, U.S.D.J.**